De Kay v. Voorhis.

MINNA DE KAY et al.

*v.*

HENRY H. VOORHIS et al.

Under the authority of a statute, certain bonds were issued by a water company, secured by a mortgage on their property and franchises, and forty-eight of those bonds were taken by the contractors who built the company's works, as part payment therefor. All the company's property and franchises were afterwards sold by a receiver in insolvency, subject to all legal liens, and

bought by the contractors, who re-organized the company and conveyed the property and franchises to the new company, the contractors holding almost all of the stock of the new company. On foreclosure of the mortgage by the holders of twenty-four of the forty-eight bonds, which had been assigned by the contractors—*Held*, that the contractors and the old company and the new company were all estopped from alleging any invalidity in the execution or delivery of the bonds, or want of power of the old company to issue them.

Bill to foreclose. On final hearing on pleadings and proofs.

*Mr. W. S. Gummere*, for complainants.

*Mr. John Linn*, for Bacot and Ward and the "Hackensack Water Company, re-organized."

*Mr. C. H. Voorhis*, for Henry H. Voorhis, trustee.

The Chancellor.

The bill is filed for foreclosure and sale of mortgaged premises in Bergen county. The mortgage is dated September 15th, 1874, and was given by the Hackensack Water Company on all its land and pumps, engines and boilers, machinery, pipes, hydrants, appendages and property of every kind and description, and all its rights, powers, privileges and franchises. It was given to Henry H. Voorhis, trustee, to secure the payment of one hundred and thirty-two bonds, each for $500, with interest coupons attached, given by the company, payable to the trustee or bearer. The property was subsequently sold, subject to all legal liens and encumbrances, by a receiver, under proceedings against the company in insolvency in this court, and was bought by Robert C. Bacot and John F. Ward for $2,500. They afterwards re-organized the company by the title of the "Hackensack Water Company, re-organized," and conveyed the property and franchises to it for the consideration, as expressed in the deed, of $155,000, and it now holds them. Of the one hundred shares of the stock of the company as re-organized, Bacot and Ward, at the time of the re-organization, held all but four, and they were held by the three other persons named in the certificate of re-organization, who, according to the

statements of that instrument, became stockholders by the transfer by Bacot and Ward to them of the shares which they held. The bill is filed by the holders of twenty-four of the bonds against the trustee, Bacot and Ward, the company as re-organized and the trustees in a mortgage given by the company since the re-organization.

It is admitted that the bonds are due, and it appears that the trustee, before the suit was brought, refused to permit his name to be used as complainant in a suit which it was proposed to bring to foreclose the mortgage. The bill is filed for the benefit of the complainants and such others of the holders of the bonds secured by the mortgage as may come in and seek relief in the suit. The defence set up by Bacot and Ward and the re-organized company (the mortgagees under the mortgage given since the re-organization have not answered) is that the mortgage has no validity because the company had no power to give it, and because the person by whom it purports to have been executed in behalf of the company, as its president, was not its lawful president, and executed the mortgage without any authority; that the execution thereof was not duly acknowledged or proved, and that the mortgage was never delivered to the trustee.

The charter authorized the company to borrow money to an amount not exceeding two-thirds of the amount of the capital stock paid in, and to secure the payment thereof by bonds or other evidences of debt, bearing interest not exceeding seven per cent. per annum, and mortgage upon its property and franchises. *P. L. of 1869 p. 133.* And the answering defendants allege and insist that at the time when the mortgage was given, there had been paid in only $1,675 on account of the capital stock. The amount of stock was, by the charter, fixed at $50,000, with power to double it. By resolution of August 1st, 1873, the company increased its stock to the amount of $100,000. Afterwards, and after the mortgage was given, the company was authorized to increase its stock to $500,000, and to borrow on mortgage such sums of money as should be necessary to purchase lands or construct and maintain its works &c. This power was given by a supplement to the charter passed April

8th, 1875. *P. L. of 1875 p. 256.* The company, on the 26th of September, 1874, passed a resolution that one hundred and thirty-three bonds, of $500 each, dated September 15th, 1874, payable November 1st, 1890, bearing interest at seven per cent. per annum, payable half yearly, with coupons attached, be issued in due form of law to Henry H. Voorhis, trustee, and that a mortgage on all the real estate and property, rights and franchises of the company be executed and delivered to the trustee, in due form of law, to secure the payment of the bonds; and at the same time, it passed another resolution authorizing the treasurer to negotiate those bonds to the best advantage of the company, according to his judgment. Under the first of those resolutions the mortgage in suit was executed and delivered and the bonds issued, and under the other the bonds held by the complainants and others were negotiated. Messrs. Bacot and Ward built the company's works under a contract made by them with it, and the bonds now held by the complainants are twenty-four of forty-eight which, on the 5th of December, 1874, were given to and accepted by Bacot and Ward on account of the contract.

It is quite obvious that Bacot and Ward, having sold and given currency to them, are therefore estopped from denying the legal validity of the bonds or the legality of the lien of the mortgage by which they declare on their face that they are secured. Moreover, they bought the property at the receiver's sale expressly subject to the mortgage, and it is proved that but for that fact the sale would not have been confirmed, in view of the comparative insignificance of the price, which otherwise would have been grossly inadequate. And although the statement was made at the sale that the validity of the mortgage would be disputed, the property was, nevertheless, sold subject to the mortgage and a consequent liability to pay the full amount thereof. It is quite clear that the corporation by which the bonds and mortgage were given would be estopped from denying the validity of those instruments and the lien which the mortgage purports to create, on any of the grounds taken by the defence. *Galveston R. R. Co.* v. *Cowdrey, 11 Wall. 459.* And

De Kay *v.* Voorhis.

those defences are not available to the re-organized company, for it got and could get from Messrs. Bacot and Ward only what they obtained by the deed from the receiver and no more; that is, the company's interest in the property, subject to all legal claims and encumbrances and all equities. And it may be added that it does not occupy even the position of a purchaser for value, for it gave only its stock and bonds for the property. And Messrs. Bacot and Ward evidently own all of the stock except the few shares which they have transferred, probably without consideration, to the persons who aided them in the re-organization. It does not, in fact, appear, it may be observed, that the company was not duly organized, nor that the person by whom the mortgage was executed as president was not such officer, nor that the whole of the capital stock was not subscribed and paid in; and it does appear that the execution of the mortgage was duly authorized and that it was duly proved. The property mortgaged was valued by Mr. Bacot, in 1879, at $82,508.80, and the bonds at par amounted to only $66,500. If the allegation of the defence is true, that there were only about $1,700 of the capital stock paid in, it would seem quite probable that the mortgaged premises were in part paid for with the proceeds of the bonds. So far as the property of the company is concerned, it had power, without legislative authority, to mortgage it to secure the payment of its debts. And as to its franchises, it had positive legislative authority to mortgage them, with a limitation (which the answering defendants allege it did not observe) as to the extent to which it should use the power. The equities are all with the complainants. There will be a decree for fore-closure and sale of the mortgaged premises. It appears by the testimony of Mr. Ward that he and Mr. Bacot have obtained control of about seventy-two per cent. of the bonds and have guaranteed the re-organized company against any claims under them. The complainants and the trustee are entitled to their costs, to be paid out of the proceeds of the sale of the mortgaged premises.